[No. 11256. Department Two. January 12, 1915.]

BERTHA LE CLAIRE, *Respondent*, v. WASHINGTON WATER POWER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—SAFE PLACE TO WORK—NEGLIGENCE—HAZARDOUS EMPLOYMENT—OBVIOUS DANGERS. It is not negligence on the part of a master in failing to supply a safe place to work, rendering him liable for the death of an employee, in that he required the latter to work in a rowboat upon a stream impounded by a dam with spillways rendering the current swift, which was in places unsafe for a rowboat, where it was safe in the places where the men were required to work, if they used ordinary care, and where the danger was as open and apparent to the employee as to the master.

SAME—HAZARDOUS EMPLOYMENT—ASSUMPTION OF RISK—SKILL OF EMPLOYEE—REPRESENTATIONS TO MASTER. Where an employee of mature years undertakes to perform a service in a hazardous employment, representing that he had had experience, the dangers of which are open and apparent, he impliedly represents that he has sufficient skill to perform the service, and the employer is not liable to him for an injury resulting merely because he overestimated his qualifications.

SAME—DUTY OF MASTER—SAFE APPLIANCES—KNOWLEDGE OF SERVANT. In an action for the death of an employee resulting from loss of control of a rowboat occasioned by the slipping of an oarlock, the fact that the boat furnished by the employer was fragile and light, being a Mullin's steel boat, would not render the master liable, where it appears that it was a boat in common use, with no structural defects, that the employee was as cognizant of its strength or frailty as the employer, and that the slipping of the oarlock from its socket was the result not of the insufficient strength of the boat to stand the strain but of the manipulation of the oar.

SAME—USUAL APPLIANCES. The failure to fasten the oarlocks in their sockets so as to prevent their coming out by reason of faulty

[1]Reported in 145 Pac. 584.

manipulation of the oars cannot be charged as negligence on the part of the employer, where it was usual and customary to leave the oarlocks unfastened.

Appeal from a judgment of the superior court for Lincoln county, Baske, J., entered December 21, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

*Post, Avery & Higgins*, for appellant.

*Martin & Wilson, Arthur W. Davis*, and *Harry A. Rhodes*, for respondent.

FULLERTON, J.—On July 19, 1910, the appellant, The Washington Water Power Company, was engaged in constructing a dam for a power site across the Spokane river at a place thereon called Little Falls. The dam as constructed extended from the east bank of the stream westerly for a distance of some 180 feet, whence it turned at a right angle to the south for a distance of about 1,000 feet to the west bank of the river, where the power house was situated. The main current of the stream struck the dam at its shorter arm, from whence it was diverted around the corner of the dam to the longer arm, where a channel had been formed of practically uniform width and depth, partly from the natural bed of the river and partly by excavation from the bed and the adjoining bank. In constructing the dam, three spillways had been left therein, one in the shorter arm about midway across the stream and the other two on the longer arm, but comparatively close to the angle in the dam. As the dam neared completion, it became necessary to close these spillways. To do this, the appellant stopped the flow of water by using timbers, some 12 inches square and 14 feet long, which it forced down over the openings and on them placed a canvas to prevent leakage. This stopped the flow of water and enabled it to fill the aperture with concrete. After the concrete was put in place, the pressure on the timbers was relieved and the timbers floated to the surface by reason of

their own buoyancy. After the middle one of these spillways had been filled in the manner described, the company next proceeded to fill the one across the shorter arm of the dam, and it was necessary to move the timbers to that place. To prevent the timbers from floating away after they came to the surface of the water, ropes had been fastened to them and to some fixture on top of the completed portion of the dam. After the filling of the first spillway, some four of these timbers had drifted towards the remaining spillway on that arm of the dam, and it became necessary to float them around the angle in the dam to a point from which they could be drifted to the spillway next desired to be filled. It was the opinion of the foreman that this could best be done with the aid of a boat.

The appellant had in its employ at that time a man, twenty-six years of age by the name of Edward Le Claire. He was working in what was known as "the rigging gang," whose duty it was to construct and keep in repair the necessary false work and rigging to enable the work on the dam to proceed. This rigging gang put in place the timbers to stop the flow of water through the spillways while they were being permanently filled with concrete.

After the work of filling the first spillway had been completed the foreman in charge of the rigging gang directed Le Claire and a man by the name of Peterson to go to the company's warehouse, which was situated some distance from the dam up the stream, and get a rowboat belonging to the company, bring it down to the dam, and tow the four logs before mentioned around the corner of the dam. It was testified that Peterson was an experienced boatman, and that Le Claire had also represented himself so to be to the foreman, and it is the foreman's testimony that these two were chosen to perform the work because of these facts. He nevertheless cautioned them to be careful in performing the work and not to approach too near the spillways. No direction was given as to which of the two men should handle the oars. The men

proceeded to the warehouse, procured and launched the boat, and brought it down the river to the face of the dam, Le Claire using the oars. The men towed with safety three of the timbers around the point of the dam, taking one of them at one trip and two at another. The fourth timber was somewhat nearer the spillway than the others, and was below a plank which projected from the dam into the water near its surface for a distance of some $3\frac{1}{2}$ or 4 feet. In removing this timber to get it around the projection, Le Claire chose to tow it directly out from the dam towards the middle of the stream. He had proceeded but a short distance when one of the oarlocks of the boat lifted out of its socket. Le Claire called to Peterson, who was sitting in the back of the boat holding the rope with which the timber was towed, to replace it. Peterson came forward and made two attempts to do so, but failed owing to the fact that a leather strap or string with which the oar lock was fastened to the boat got in his way. The boat was then drifting toward the spillway, and Peterson attempted to save himself by jumping overboard and swimming to the shore. Le Claire stayed in the boat and was carried down to and through the spillway and drowned.

The respondent, who is the widow of Edward Le Claire, conceived that her husband's death was due to the negligence of his employer, and brought this action to recover therefor. In her complaint, the respondent set forth a number of acts which she claimed constituted negligence on the part of the employer, all of which were put in issue by the answer of the appellant, who also set forth the pleas of contributory negligence and assumption of risk. The trial judge, however, submitted to the jury but four propositions, which he stated in the following language:

"(1)   That defendant was negligent in that the place they ordered said Le Claire to work was hazardous and unsafe;

"(2)   That the defendant was negligent in that Le Claire was unfamiliar with the work he was ordered to do on July 19, 1910, and was unaware of the dangers of the river, its rapid

flow and undercurrent at the place he was ordered to work, and that he was not informed in relation to these things;

"(3)    That the defendant was negligent in providing a Mullins steel boat in which to work on said river, and that the same was too frail and light and so insufficiently braced that rowing in the current of the river, this caused the oar lock to come out.

"(4)    That the oar locks in said boat were not securely tied so as to prevent the same from raising in their sockets and coming out, and plaintiff also alleging states that the defendant's negligence in all of these respects was the cause of her husband's death, and that there was no negligence on the part of E. L. Le Claire."

The jury returned a verdict for the respondent, and from the judgment entered thereon, this appeal is prosecuted.

The appellant, at the close of the case, challenged the sufficiency of the evidence to sustain a verdict against it, and the overruling of this challenge constitutes the first error assigned.  It is our opinion that the challenge should have been sustained.  After a careful study of the entire evidence, we are unable to conclude that it shows actionable negligence on the part of the appellant.  The first claim of neglect of duty on the part of the appellant is that it did not furnish Le Claire with a safe place in which to work.  In the sense that there was some danger attending the rowing of a boat in the vicinity of the spillways, this claim has foundation in fact.  But this alone is not the measure of an employer's liability.  Such a rule would make the employer an insurer and liable in every case of injury, as there is hardly any employment in which a person can engage that has not some attendant dangers.  Particularly is this true where the employee is engaged to work about a dam across flowing water, or about machinery, or in work requiring the use of edged tools, or in work in which the instrumentalities used in its performance necessitate the use of skill or care.  But in none of  these cases is the master liable for an injury to his employee, merely because he suffers him to work about such places or with such in-

strumentalities.  The employer's liability arises in such cases only where the dangers are hidden or obscure, and the employee is ignorant of them, or of such a degree of immaturity that he cannot be expected to appreciate or understand them. Where the employee is of mature understanding, and the dangers of the employment are open to his observation, and can be avoided by the exercise of reasonable care on his part, the employer is not responsible for an injury arising therefrom.  In other words, every employment has its own peculiar hazards, and the law does not hold the employer liable for such hazards as are ordinarily apparent and usually and naturally belong to the employment.  These principles have been repeatedly laid down by this court, and, indeed, we think are not questioned anywhere. *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Deaton v. Abrams*, 60 Wash. 1, 110 Pac. 615, 47 L. R. A. (N. S.) 266; *Waterman v. Skokomish Timber Co.*, 65 Wash. 234, 118 Pac. 36; *Hanson v. Shipley*, 71 Wash. 632, 129 Pac. 377.

In the case before us, there was nothing concealed about the place of work.  The water of the river had been impounded by a dam in which two spillways had been left open.  Through these spillways the water rushed with great force, and for some space back of them the current of the stream was unsafe for a rowboat, but where the employees were required to work was attendant with no special dangers.  They had but to exercise ordinary care to be safe.  Furthermore, the dangers were open and apparent; as obvious to the employees as they were to the employer.  We cannot think, therefore, that there is any room for the claim of negligence made in this regard.

Again, it is said that Le Claire was unfamiliar with the work he was ordered to do, was unaware of the dangers of the river, its rapid flow and undercurrent, and was not informed of these things by his employer.  But here again we think the evidence fails.  The evidence thought to show his unfamiliarity with the dangers attendant on rowing a boat upon a flowing stream was that of his relatives, who testified

that he had had no great experience in these matters. But their testimony, remote as it was from the real question, showed that his experience was much greater than that of the average person. But the direct testimony, as we have before stated, was to the contrary. He represented himself as having such experience, and was selected for the work because of this fact; he took control of the oars himself, notwithstanding an experienced boatman was sent with him; and he handled the boat with sufficient skill until he met with the mishap that caused his death. These were representations on which his employer had a right to rely, and it cannot be held liable for his death if he in fact misrepresented his ability to perform the particular work. Where an employee of mature years undertakes to perform a service, the dangers of which are open and apparent, he impliedly represents that he has sufficient skill to perform the service, and the employer is not liable to him for an injury caused thereby merely because he overestimated his qualifications. Labatt, Master & Servant (2d ed.), § 1148. But the case here is even stronger than the rule requires; there were the positive representations of the deceased as to his necessary skill.

Another contention is that the boat furnished by the appellant was unsuitable for the purposes for which it was directed to be used, that it was too fragile and light and insufficiently braced, and that these defects caused the oar lock to come out of its socket. Certain of the respondent's witnesses did testify that, in their opinion, the boat used was not as suitable for the purpose as another form of boat would have been. But clearly this does not fix liability upon the employer. The evidence was all to the effect that the boat was a standard boat, comparatively new, with no structural defects not common to its class, and of a kind in common use throughout the several states, upon streams and bodies of water of all kinds where row boats are usually in use. In fact it was the only boat mentioned in the testimony that was recognized by the witnesses by the mere mention of its name. Nor was there any testi-

mony to the effect that the oarlock came out of its socket because of the insufficient strength of the boat to stand the strain of rowing. On the contrary, the evidence is to the effect that it was lifted out in a natural manner, and could have been replaced but for the interference of the strap with which it was fastened to the boat to prevent its loss overboard in case of the very accident that did happen to it. But more than this, the boat was before the employee. He knew the waters over which he was expected to row it. Its strength or frailty was apparent to him, and, whether it was suitable for the purpose, was as much within his knowledge as it was within the knowledge of his employer. It is not a case where a defective tool or instrumentality has been furnished an employee by his employer causing an accident, but a case where a standard and approved instrumentality was furnished, and an accident caused by faulty manipulation of the instrument furnished. An employer complies with his duty in this respect to his employee when he exercises reasonable and ordinary care in the selection of instrumentalities destined for his use, when he furnishes him with such as are in common use, without radical defects in themselves, even though it may be shown that there were better appliances for the particular purpose.

But it is said the oarlocks should have been fastened in their sockets so as not to come out even by faulty manipulation of the oar. Doubtless, had these oarlocks been so fastened, this particular accident would not have happened. But here, again, the evidence is all to the effect that such a process is unusual and not according to custom; that it was usual and customary to leave them unfastened. The evidence, in so far as it bore upon the question, tended to show that there were advantages and disadvantages attendant upon both, but it is clear that no negligence can be imputed to the employer when he furnished a boat equipped in this regard in the ordinary manner.

Much was said in the evidence concerning the velocity of the current of the stream, its undercurrents and the like. These matters we shall not discuss, as we do not find that they in any manner caused the unfortunate accident. Whatever may have been the velocity of the current, it could be traversed with safety by the use of ordinary care, and it is not even to be surmised from the evidence, much less was it shown, that any of these conditions caused the oarlock to come out from its socket. That the current of the river caused the boat to drift to a place of danger after the oar was rendered useless, is of course not to be questioned, but this was not the primary nor proximate cause of the accident. The cause of the accident was the faulty manipulation of the oar by Le Claire, and for this no recovery can be had of his employer.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

MORRIS, C. J., MAIN, ELLIS, and CROW, JJ., concur.