[No. 13888. Department Two. May 4, 1918.]

WARREN GRIFFITH, *Respondent*, v. WASHINGTON WATER POWER COMPANY, *Appellant*.[1]

MASTER AND SERVANT — DANGEROUS APPLIANCES — ASSUMPTION OF RISKS—MACHINES IN COMMON USE. A power company using a generator of a type in common use in electrical power plants is not liable because improvements have been made upon generators by which varying loads can be better taken care of without sparking at the commutator; and an experienced employee assumes the risk from the known tendency of the particular generator to dangerously spark while carrying a load.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 10, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee working on an electrical generator. Reversed.

*Post, Russell, Carey & Higgins,* for appellant.
*Burcham & Blair,* for respondent.

HOLCOMB, J.—In this action for personal injuries, respondent had verdict and judgment. Respondent was a graduate electrical engineer of several years' experience and had been employed by appellant some eight or nine months immediately prior to the accident, at its power house at and around the generator (a machine used for generating electricity), which he claims was defective and obsolete and of whose de-

¹Reported in 172 Pac. 822.

fective condition he claims he had no notice. Appellant admits the injury and pleads contributory negligence and assumed risk.

Appellant assigns as error: (1) The court erred in overruling defendant's challenge to the evidence at the close of plaintiff's case; (2) the court erred in overruling defendant's motion for a judgment of dismissal at the close of all the evidence and in submitting the case to the jury; (3) the court erred in overruling defendant's motion for judgment *non obstante veredicto* and in entering judgment on the verdict.

These assignments may be taken up together. The proximate cause of the injury seems to be merely conjectural. The respondent, after describing the machinery and his duties, testified in his direct examination as to the injury on June 14, 1910:

"Q. Now, Mr. Griffith, coming down to June 14, 1910, after you had cleaned out the commutator, state who was there at that time. Did you state? A. Mr. Rawlins. Q. What was done after the machine was cleaned out? A. Well, after it was gone over thoroughly, why then the order was given to the operator to throw it upon the line in order to get the service. You understand there is a certain procedure that has to be gone through with; the floorman has to bring the machine up to the proper speed, so as to get the proper voltage before it can be thrown; that's one of the duties of the floorman, the machine tender. Q. That's what you were doing at that time? A. Yes, that's the shift I was taking at that time. Q. Well, state what occurred then, after the machine started. A. Well, after the machine was started and on to the line and carrying load, I don't know how much load; at that particular instant I noticed that one of these brushes in here on this side, I think it was here (indicating), I would say the third brush arm holder from the top, to your left as you face the commutator, I noticed one of the brushes sparking, so I stepped upon this board very carefully, and with one hand released that little

spring, and with the other hand removed that carbon brush, and scratched the under part of it with the finger, and found a little hard particle on it, and I just scratched it off with my finger nail and placed the brush back in position, and it worked fine, to my satisfaction; then I stepped around to the other side of the generator, and I noticed that this brush on this side, in a similar position, I noticed one of the brushes there, bucking a little bit, and I was going—I stepped upon there and I got my hands just in this position (indicating) and that's all I know, and when I came to, I was down on the floor there, badly burned. Q. Now, what caused you to fall? A. Well, the flash was so great that it dazed me, and made me unconscious; I know that.''

There was no direct testimony as to the cause of the accident, but there was a great deal of testimony that this particular generator sparked a good deal of the time and that occasionally there would be a ''flash-over.'' Plaintiff knew that the generator was dangerous while carrying a load, and that it would ''flash-over'' if a brush should accidentally be dropped on the commutator, and that it would flash when carrying 600 volts on the railway service. He may have disturbed the exciting cause of the flash.

Plaintiff attributes negligence to the use of the type of generator on which he was injured, and showed that improvements have been made upon generators since 1906 by which varying loads can be better taken care of without sparking at the commutator. The generator upon which the injury occurred was of a type still in common use in electrical power plants without the latest improvements.

We held in *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385, that the law is well settled that the master discharges his duty when he provides machinery that is of ordinary character and reasonably safe. He is not required to provide the newest and

best.  Employers are not insurers, and the law recognizes that absolute safety is unattainable.  They are liable for the results of their negligence, and not for the dangers necessarily connected with the service. The risks incident to the employment are assumed by the person accepting such employment.  An employer who uses machinery which is in common and ordinary use in the line of business in which he is engaged cannot be held liable for an accident which might have been prevented by the use of different machinery.

It has also been held in *Le Claire v. Washington Water Power Co.*, 83 Wash. 560, 145 Pac. 584, that an employer complies with his duty to his employee when he exercises reasonable and ordinary care in the selection of instrumentalities destined for his use, when he furnishes him with such as are in common use, without radical defects in themselves, even though it may be shown that there were better appliances for the particular purpose.  The machine in question was not shown to have any radical defect in itself.

It is a well settled rule that the servant assumes the risk of apparent danger.  This rule will apply with equal force to such dangerous instrumentalities as electrical appliances, especially where the servant is experienced and has worked around such instruments a considerable time.

There being no evidence to sustain the verdict, the cause will be reversed with directions to dismiss.

ELLIS, C. J., CHADWICK, MOUNT, and PARKER, JJ., concur.