[No. 15377. Department Two. September 24, 1919.]

MAY BRANDON, *Administratrix, Respondent,* v. GLOBE INVESTMENT COMPANY, *Appellant.*[1]

MASTER AND SERVANT (98, 99)—ASSUMPTION OF RISKS—KNOWLEDGE BY SERVANT OF DEFECT OR DANGER. An experienced window washer assumed the risk or was guilty of contributory negligence, when, owing to defective window stops, a window he had frequently washed and to which he was holding, pulled through and he was killed; the master having no notice of the defect.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 10, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the wrongful death of a window washer, after a trial on the merits. Reversed.

*Roberts & Skeel,* for appellant.

*Karr & Gregory* and *H. G. Sutton,* for respondent.

BRIDGES, J.—On April 27, 1918, and for many years prior thereto, the appellant was the owner of the Globe Block, in Seattle, Washington. For six or eight years prior to that date, Neil A. Brandon had been employed as the window washer for such block. He used his own methods and tools in the performance of this work. It had been his habit to wash the windows several times each year. The windows were all of the common upper and lower sash kind. On the

[1]Reported in 184 Pac. 325.

date above mentioned, Brandon was washing one of the windows on the second floor of the building While no person saw the accident, yet we believe it can fairly be stated that, after washing the inside of this particular window, the deceased raised the lower sash and climbed out onto the window sill, then lowered both sashes, and, while holding on to the window with one hand, used the other to wash the outside of the window. Manifestly the window was not sufficient to bear such weight as he put on it; for he fell to the paved alley below, and shortly thereafter died as a result of the fall. The window had pulled through and between the stops, and was hanging out over the side of the building by means of the window ropes. Those who afterwards found the window in this condition replaced it between the stops without the removal of the latter.

The respondent is the duly appointed administratrix of the deceased's estate. The negligence charged against the appellant is that it kept the window in an improper and unsafe condition and so that the casing did not properly fit, and that the window was loose and could with ease be pulled through the strips or stops intended to hold it in place. There was a verdict in a substantial sum for the respondent. This appeal is from the judgment entered thereon. The appellant, during the trial, made timely motions for nonsuit, an instructed verdict and for a new trial, all of which, however, the trial court refused.

It is too well settled to need citation of authority that it is the duty of the master to furnish his servant a reasonably safe place in which to work; but another rule, which qualifies and runs with the one announced and which is equally well settled, is that, where the danger or defect is as much open to the view and knowledge of the servant as of the master, then the

servant cannot recover for an injury, because he, having knowledge of and appreciating the danger or defect, either is guilty of contributory negligence or has assumed the risk. It is upon this principle that this case must be decided. In the case of *Griffin v. Ohio & M. R. Co.*, 124 Ind. 326, 24 N. E. 888, it was said:

"Where the danger is alike open to the observation of all, both the master and servant are upon an equality; and the master is not liable for an injury resulting from the dangers of the business."

At § 346, Beach on Contributory Negligence (3d ed.), it is stated:

"Knowledge on the part of the employer, and ignorance on the part of the employee are of the essence of the action; or, in other words, the master must be at fault and know of it, and the servant must be free from fault, and ignorant of his master's fault, if the action is to lie. The authorities all state the rule with these qualifications."

The rule above announced has become the settled law of this state. In the case of *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937, Judge Dunbar announced the rule in the following language:

"It is claimed by the respondent that the rule that, where a servant enters upon employment, 'he assumes the usual risk and perils of the service,' as applied to the facts of this case, still gave the respondent the right to assume that the master had furnished him a safe and convenient place in which to perform the services required of him. That proposition is no doubt correct, but the assumption cannot be relied upon after actual knowledge to the contrary is brought home to the mind of the servant. The assumption will control only where the danger is not apparent. No sane man is expected to act on an assumption which he knows to be false. It is a man's duty to exercise

common sense when in the employment of a master, as well as any other time."

In the case of *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A. (N. S.) 283, this court said:

"That the master is under obligations to give the servant a reasonably safe place to work is, of course, a well established principle of law. But where the servant is in as good a position as the master to ascertain and understand the situation, and does equally well know and appreciate the existing conditions, he cannot be heard to complain from injuries sustained by working therein."

In the case of *Cole v. Spokane Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831, the rule was announced in the following language:

"The master could have no more knowledge of such a defect than the servant possessed, for the instrumentality was so simple that it was the duty of the servant to know its condition, and either call the attention of the master to it or protect himself against the possibility of injury. The rule seems well established that an implement of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect, does not come within the rule of safe instrumentalities, for there is no reason known to the law why a person handling such instrument and brought in daily contact with it should not be chargeable equally with the master with a knowledge of its defects."

To the same effect, see the following cases: *Wilson v. Northern Pac. R. Co.*, 31 Wash. 67, 71 Pac. 713; *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711; *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838, L. R. A. 1917E 178; *Dahl v. Puget Sound Iron & Steel Works*, 77 Wash. 126, 137 Pac. 315; *Johnston v. Nichols*, 83 Wash. 394, 145 Pac. 417;

*Dixon v. Western Union Tel. Co.,* 68 Fed. 630; *Larsson v. McClure,* 95 Wis. 533, 70 N. W. 662; *Day v. Cleveland, C., C. & St. L. R. Co.,* 137 Ind. 206, 36 N. E. 854; 18 R. C. L., § 172 *et seq.,* page 683 *et seq.*

The testimony in this case plainly shows that the master did not have any actual knowledge of the defect in the window in question; indeed, it shows that the janitor whose duty it was to look after and repair the windows in the building did not know of the defect. The deceased, however, was an experienced window washer. He was allowed to do the work by his own methods and with his own instruments. He had washed the windows of this building, including the one in question here, probably once a month for a number of years. No one could have been so well acquainted with the defects in this window as he; for it is admitted that such defect as there was must have existed for a number of years. The window was not made to serve the purpose to which the deceased was putting it; and, if he desired to use it in that way, it was his absolute duty to make investigation and learn for himself whether or not it was of sufficient strength to permit him to safely make such use of it. The slightest investigation by him would have shown him whether he could safely do his work in the way he desired to do it. He could not blindly rely on the duty of the master to furnish him a reasonably safe window for the uses which he desired to make of it. He had a duty to himself; a duty to make investigation to see if the window was strong enough to serve his purpose. The law would not permit him to close his eyes to all defects and then, if he be injured as a result of some defect which it was the duty of the master to remedy, recover damages of the master for such injury. Any such rule would allow the man injured to take advantage of his own wrong and would

encourage carelessness. If the window casing in the first place had been built too small, or if it was shrunk so that it would push out between the stops, this condition must have been manifest to the deceased had he made the smallest amount of investigation. It is very clear to us from the facts that the deceased was either guilty of contributory negligence or assumed such risk as existed in doing the work in the way he did it. Most, if not all, the cases relied upon by respondent, were based and decided upon principles of law not involved here. In most of them the defect was latent and the instrument or place was being put to a common use. The case of *Monahan v. National Realty Co.,* 4 Ga. App. 680, 62 S. E. 127, was one where the plaintiff sued to recover damages for an injury to her hand caused by the breaking of the chains supporting a window sash. She was in the act of raising the window when the chain broke. Here the defect was latent and the ordinary use was being made of the window.

In the case of *McIntyre v. Detroit Safe Co.,* 129 Mich. 385, 89 N. W. 39, the facts were that the plaintiff had driven a wagon on certain scales for the purpose of weighing the load. The sills below broke because of defects. Again we have a plain case where the defect was latent and a casual examination would not have shown it, and the scales were being put to the use for which they were built.

In the case of *Alamo Oil & Refining Co. v. Richards,* 172 S. W. (Tex. Civ. App.) 159, the court expressly held that the plaintiff was not required to examine for latent defects.

In the case of *White v. Beverly Bldg. Ass'n,* 221 Mass. 15, 108 N. E. 921, the plaintiff was using a common stair with a railing. The railing broke and resulted in injury to the plaintiff. Plainly this case does

not involve the same principles which must control the one before us.

The other cases relied upon by respondent are of the same general kind as those which we have noticed. They are all vastly different in their facts from the case at bar.

The case of *Fanjoy v. Seales*, 29 Cal. 244, very closely resembles the case at bar. The facts were that appellant was painting a brick building which had but recently been completed by contractors employed by appellee. In order to do the painting appellant had suspended a staging to the cornice of the building, and while he was standing on the cornice in the performance of his work, a portion of the wall, together with the cornice, fell, throwing him to the ground and injuring him. The testimony showed that appellant was doing his work in the usual and customary way, and that appellant was ignorant of any defect. The court said:

"Cornices are intended and constructed for ornamental purposes, and not for the use to which the one in question was put by the painters. We are not satisfied that the general custom of painters to use cornices for supporting the stagings and platforms necessary for the prosecution of their work of painting houses imposes on the owners thereof the duty of constructing such cornices sufficiently strong to sustain burdens for which they were not designed."

We see no escape from the conclusion that the judgment must be reversed and the case remanded for dismissal.

It is so ordered.

HOLCOMB, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.