[No. 19236. *En Banc.* November 20, 1925.]

# E. C. HAMRE, *Respondent*, v. ROTHSCHILD & COMPANY, INCORPORATED, *Appellant.*[1]

MASTER AND SERVANT (42, 43, 154)—NEGLIGENCE OF MASTER—SAFE PLACE FOR WORK—PLATFORMS AND SUPPORTS—QUESTION FOR JURY. It is for the jury to determine whether fellow servants of a carpenter were guilty of negligence in using a defective timber in constructing a brace in the hold of a ship without inspecting it, where there was evidence that they were deprived of any opportunity to inspect the timbers from the fact that they had to use what was sent into the hold without choice, and that the light in the hold was insufficient for inspection.

SAME (110)—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DEFECT. In such a case, the contributory negligence of the plaintiff in using the support with knowledge of the defect, is a question for the jury.

MASTER AND SERVANT (42, 43)—NEGLIGENCE OF MASTER—SAFE PLACE FOR WORK—PLATFORM AND SUPPORTS. Where the master, constructing partitions in the hold of a ship, gave his carpenters no opportunity to inspect and select the material to be used, he is liable for injuries sustained through negligently furnishing, without inspection, unsafe timber used in the partition.

SAME (94, 103)—ASSUMPTION OF RISKS—DEFECTIVE PLACE—CONTINUING WORK WITH KNOWLEDGE OF DANGER. A carpenter, working in the hold of a vessel, assumes the risks incident to insufficient lighting, where he continued his work without complaint, well knowing the conditions; and it is error to refuse to withdraw from the jury the issue of negligence in failing to furnish proper light.

APPEAL (142)—EXCEPTIONS TO INSTRUCTIONS—NECESSITY. In an action for injuries to a carpenter working in the hold of a vessel, error cannot be assigned on the failure of the court to apply the law in admiralty on the question of assumption of risks, where no exceptions were taken to instructions according to common law rules, or request made for instructions upon any other theory.

HOLCOMB, FULLERTON and PARKER, JJ., dissent.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 29, 1924, upon the verdict of a jury rendered in favor of the plaintiff,

[1]Reported in 240 Pac. 909.

in an action to recover injuries sustained by a carpenter working in the hold of a vessel. Reversed.

*Poe, Falknor, Falknor and Emory,* for appellant.

*Winter S. Martin* and *William A. Gilmore,* for respondent.

MACKINTOSH, J.—The plaintiff was injured while working for the defendant. The ship on which he was working was at a wharf in Seattle, and was to be loaded with bulk wheat to be carried to a distant port. In order that the cargo would not shift to one side and thus endanger the ship's safety, it was necessary that a bulkhead or a wooden partition be put in the hold of the vessel. It was to be located at about the middle of the ship and to run the entire length of the hold. It was to be held in place by means of 6x6 pieces. These braces were to be in tiers. They had to be of different lengths so as to conform to the shape of the vessel. It was the duty of the respondent to assist in placing this partition in the vessel, acting as carpenter in that connection.

A skilled man had made plans and specifications for the partition, showing approximately the number and lengths of the boards and braces. These came from a mill in Seattle and were brought alongside the ship on a scow. This lumber, previously cut to approximately proper lengths, was loaded in slings on the scow and thus let down into the hold. It was the purpose to put into each hold the approximate number of pieces of lumber and braces needed for that particular hold. When they were received by the workmen in the hold, they would, if alteration were necessary, saw them into proper lengths and do the work of constructing the bulkhead and bracing it.

There was testimony to the effect that these workmen used, and were expected to use, whatever lumber was

sent down to them without inspecting it. There was also testimony to the effect that the lumber was not inspected for quality as it was taken from the scow and let down into the vessel. For most of the day on which the injury occurred, the respondent had been working in hold number two; but, during the afternoon, was directed by the foreman to go into hold number four and assist the workmen there in completing the partition in that portion of the vessel. When he got there, much of the partition had been constructed and some of the braces had been put up. The first brace of each tier of braces was placed rather close to the floor of the vessel, and generally there were two above it, one above the other. In order to put these upper braces in place, it was necessary that the workmen should stand upon the lower brace. It was while so standing that the respondent, after he had been working in hold number four about an hour, fell from one of the upper braces, on which he had been standing, a distance of fifteen feet to the floor of the vessel, injuring himself. His fall was caused, so it was alleged and so much of the testimony tended to prove, by the breaking of the brace upon which he was standing, because it had in it a very large knot and was otherwise rotten and defective about the knot.

The respondent alleged, and undertook to prove, that the appellant was guilty of negligence in not furnishing a reasonably suitable and safe place to work, in that it furnished a defective brace upon which it knew he must stand in order to do his work, and in that insufficient light was furnished in the hold of the vessel. The answer denied any negligence on the part of appellant, and alleged contributory negligence and assumption of risk by the respondent, and that he had been injured through the negligence of a fellow-servant.

Judgment was entered upon a verdict for five thousand dollars in favor of respondent.

The appellant first contends that the respondent was injured solely through the neglect of his fellow-servants. It will be remembered that, when he came into hold number four, the brace which broke had already been put into place. If it had fallen because it had been insufficiently nailed or otherwise installed, then probably the injury would have resulted through the negligence of his fellow-servants. But here it was not the result of anything the fellow-servants did or failed to do, unless they were negligent in using this defective brace. Whether they were negligent in that regard was a question for the jury, because it was for it to determine whether there was any duty resting upon these fellow-servants to select and inspect the lumber which they installed. Much of the testimony is to the effect that no such duty rested upon them. Indeed, there is testimony to show that, because only a certain number of braces were sent into the hold to complete the work, they were deprived of any opportunity of selecting. In addition to this, there is testimony tending to show that the light was insufficient, and it was for the jury to determine whether the fellow-servants had been guilty of negligence, taking into consideration the light conditions, in installing a defective brace, even though it was their duty to reject that which they knew was not suitable.

Substantially the same view must be taken with reference to the respondent's alleged contributory negligence. He did not put in the defective brace and therefore could not be held responsible for it. If he was negligent at all it was because he stood upon a brace which he knew, or should have known, was defective. Under all the circumstances, it was clearly the duty of the jury to determine this matter.

Appellant very earnestly contends that it furnished a reasonably safe place to work and that no negligence upon its part was shown. It asserts that there was no duty resting upon it, and there was no effort upon its part, to inspect the materials which were sent down into the hold. For the most part, it bases this argument on the scaffolding cases out of this court, some of which are the following: *Metzler v. McKenzie,* 34 Wash. 470, 76 Pac. 114; *Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D 433, L. R. A. 1917E 198; *Swanson v. Sound Construction & Engineering Co.,* 67 Wash. 128, 120 Pac. 880; *Eckert v. Sound Construction & Engineering Co.,* 73 Wash. 320, 131 Pac. 1121.

It asserts that, while the rule requiring the master to furnish the servant a reasonably safe place to work is applicable with all of its vigor to permanent working places, it is inapplicable to a temporary work such as the partition in question. It is questionable whether the scaffolding cases are parallel with this case. Scaffolds are always of purely temporary use and at no time are they any part of, or in any wise permanently attached to, the building for which they are constructed; while here the partition, for at least the time being, was to become a part of the vessel itself.

However, it may be admitted, at least for the purpose of this case, that many of the rules of law applicable to scaffolds may be applied here; but it is our opinion that, when so applied, they will not be of any assistance to the appellant. The rule laid down by our cases is that, where temporary scaffolds or stagings are used by carpenters and others, there is a duty devolving upon the master to either furnish the stage or scaffold as a completed structure or to furnish lumber and materials suitable from which the

servants may themselves make the construction. If the master furnishes the completed scaffold, then he will be held responsible for defects which may cause injury; but, if he furnishes his laborers with proper material whereby they may construct a scaffold and are to select from a mass of good and bad material, then the master will not be liable for an injury occurring to the servant as a result of the improper construction or the use of improper material.

If, in the case at bar, it was conclusively shown that the master had furnished the respondent and his co-workers with a mass of material out of which they were to build the bulkhead according to a certain plan, and it was their duty to select the material, then, under the doctrine of the scaffold cases, appellant would not be liable. But such were not necessarily the facts in this case. There was ample testimony to go to the jury showing that the respondent and his co-workers did not make, and that it was not intended they should make, any selection of the material to be used. Under these circumstances, the master having furnished the material which was to be used was bound to furnish reasonably safe material. After all, the whole question comes down to whether the servants were expected to select, and were given an opportunity to select, the material, and this question was properly submitted to the jury.

The idea with reference to selection of materials which we have been trying to express is very clearly stated in the concurring opinion of Judge Ellis in *Eckert v. Sound Construction & Engineering Co.,* *supra,* where it is said:

"In cases where temporary staging is used by carpenters, masons, painters and persons in like employment, there is a duty upon the master in the alternative, either to furnish the staging as a completed struc-

ture for the use of the servants, or to furnish timbers and other materials sufficient and suitable for that work and require the servants to build the staging themselves. . . . When the master adopts the first alternative, he becomes liable for any injury resulting from a failure to use reasonable care, either in selecting the materials used or in the use of those materials in the actual construction of the staging. When he adopts the latter alternative, he is responsible only when he has failed to furnish materials sufficient in quantity, or suitable in quality, or competent fellow-servants, and the injury results from failure in all or any of these particulars.''

The idea here so clearly expressed runs through all of our scaffolding and staging cases.

But we think the judgment must be reversed because of what we consider to be an erroneous instruction, or rather error on the part of the court in refusing to give one of the appellant's requested instructions. It was alleged in the complaint, and there was testimony strongly tending to show, that the light in the hold of the vessel was wholly insufficient and that the appellant was negligent in that regard. It appears that the only light was the daylight coming through the partly open hatches. On this question the court instructed as follows:

"If the plaintiff knew that the hold in which he was working was insufficiently lighted for the work he was to do, and continued to work there, being familiar with the dangers of the place by reason of such lack of light, then he assumed the risk of the dangers resulting from insufficient light.''

The appellant requested the court to instruct on this matter of light as follows:

"I instruct you, under the facts as they have appeared at the trial, it will not be proper for you to consider this ground of negligence and the court has withdrawn it from your consideration. Assuming there

was not sufficient light in the hold of the vessel, as plaintiff contends, nevertheless the undisputed facts show that plaintiff was aware of the insufficiency of the light, if any, and continued in his employment; and, under the law, therefore, he assumed the risk of such insufficient lighting. You are, therefore, instructed to disregard this charge of negligence in plaintiff's complaint.''

The respondent had been working in hold number four about an hour before he was injured. If the light was insufficient, no one knew it as well as he. Under no circumstances could he be ignorant of that fact. He did not make any complaint or ask for additional light. Under these circumstances, it must be held, as a matter of law, that he assumed such risks as were incident to his work because of any insufficient light. If the appellant was guilty of negligence in this matter, respondent cannot be heard to complain of it, because of his absolute knowledge. If an employe's place of work is not safe, and he knows that fact, he cannot complain that his master failed to furnish him a safe working place.

We are, therefore, of the opinion that the court should have instructed the jury that they should not take into consideration any negligence on the part of the appellant in failing to furnish proper light. The question of the sufficiency of the light could have been material in the case only as affecting the question of negligence on the part of the respondent. The appellant pleaded contributory negligence. It would have been proper for respondent to prove the hold was insufficiently lighted as tending to excuse him from not having observed the defective brace.

Respondent makes an extended argument in his brief to the effect that the law in admiralty must be the law of this case, and he complains because the court

tried the case according to the principles of common law. The question is academic, and the respondent is not in position to raise it. First, because at no time did he contend that there was any difference (in so far as the trial of this case is concerned) between the rules of the common law and those of admiralty, in so far as assumption of risk is concerned. He did not contend, and does not here point out, that the common law rule with reference to assumption of risk is not the admiralty rule. Beside this, the court undertook to instruct the jury according to common law rules and the respondent did not except thereto. If he considered that the jury should have been instructed according to admiralty rules, and that such rules do not take into consideration the doctrine of assumption of risk, then it was his duty to have excepted to the instructions given.

. Many other errors are claimed by the appellant on account of the refusal of the trial court to give other requested instructions. Inasmuch as this case must be returned for another trial, it will not be necessary to discuss any more of the errors claimed. They are not likely to occur in a new trial.

On account of the error pointed out, the judgment is reversed and the cause remanded for a new trial.

TOLMAN, C. J., MAIN, MITCHELL, and ASKREN, JJ., concur.

HOLCOMB, J. (dissenting)—The decision of the majority is incorrect upon the instructions given and refused.

The instruction upon the question of the insufficiency of the light given by the court was as favorable to appellant as it could desire. The instruction requested by appellant was incorrect, and in effect would take the question of the insufficiency of the light and the

assumption of the risk from the jury and decide it as a matter of law. Furthermore, the insufficiency of the light was not relied upon by respondent as a sole and independent ground of negligence. It was only relied upon as a negligent factor which, concurring with the other conditions existing at the time the accident happened, may have been the proximate cause of the accident, all of which was a question for the jury to determine. It is true that the insufficiency of the light was such a prominent factor in the combined proximate causes that it was one which might have been assumed from its continuance without objection on the part of respondent, by reason of which the instruction as given by the court was as favorable to appellant as could be desired, and that requested was erroneous.

For these reasons I dissent.

FULLERTON and PARKER, JJ., concur with HOLCOMB, J.