[No. 19916. Department One. July 28, 1926.]

GEORGE GESSNER, *Appellant,* v. HARRY RAMWELL *et al.,*
*doing business as Everett Stevedoring*
*Company, Respondents.*[1]

[1] MASTER AND SERVANT (99)—LIABILITY OF MASTER—RISKS ASSUMED BY SERVANT—OBVIOUS DANGERS. A stevedore, loading a lumber cargo, and slipping upon fresh paint marking different consignments of the cargo, assumed the risk, as a matter of law, where he had seen and walked over the paint marks, which were customary and usually employed.

[2] SAME (141)—EVIDENCE—ADMISSIBILITY—ASSUMPTION OF RISKS. In such a case, it is not error to exclude evidence that the paint used—red lead—was more dangerous than that usually employed.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered January 21, 1926, in favor of the defendants, in an action for personal injuries, upon sustaining a challenge to the sufficiency of the evidence. Affirmed.

*Douglas T. Ballinger* and *Alex M. Vierhus,* for appellant.

*Roberts & Skeel,* for respondents.

HOLCOMB, J.—In this action for rather slight personal injuries, the challenge to the sufficiency of the evidence for appellant at the conclusion of his case was

[1]Reported in 248 Pac. 61.

sustained, on the ground that appellant assumed the risk of injury as a matter of law, and the action was dismissed. This appeal results.

Appellant was a stevedore, working aboard ship in Everett, and being in maritime employment, was not able to recover industrial insurance compensation. At the time of the accident, he was engaged in stowing lumber in the hold of a steamship in Everett. Lumber carriers usually contain more than one order of lumber, and for the purpose of separating consignments which are piled as closely as possible in the ship's hold, when a consignment to one port is finished, paint marks or strips a few inches wide are made on the lumber athwart ships at intervals of from five to ten feet. Thus, if a ship was loading lumber for several places, the lumber for the last port of call would be stowed first, and when that consignment was finished, the paint strips would be made across the surface of the lumber crosswise of the ship. The lumber for the next destination would then be stowed and, when finished, paint strips would be painted across the surface of that lumber, and so on. The method of loading lumber was to commence aft and load toward the front, and when a consignment was finished and paint strips put across it, then commenced aft again loading toward the front, covering up the paint marks as they went.

Appellant and seven others had been engaged in stowing lumber from eight o'clock in the morning until five minutes of quitting time, at five o'clock in the afternoon. The workmen who placed the paint strips across the lumber, when consignments were finished, were employees of the ship and not of the stevedores. Paint strips had been painted across the surface of some lumber to indicate·that that order was finished about an hour before the accident happened. Appellant had seen the paint strips made. Several different

colors of paint are used, and there is no particular way to do the marking, and no particular method required. The particular paint strips last painted were of red lead. The men at work that day had been going over and upon the paint strips across the lumber many times. No other accident had happened. No complaint of any man had been made about the paint strips being put on with different material which was more slippery than other paint, or of the strips being too wide, or too heavily applied, or anything of the kind. At the time of the accident, appellant was carrying two pieces of lumber to the place where he was to deposit them, when he slipped upon the paint strip which he says was five or six inches wide, and at all events the width of a paint brush, and had been there about an hour; that he had seen it; had walked over it, and most of the paint strips were covered up, only a portion of this paint strip being exposed when he slipped upon it.

The negligence alleged by appellant is the failure of respondents to exercise reasonable care in maintaining a safe place for appellant to work, and the existence of a hidden danger unknown to appellant and which was, or should have been, known to respondents by the exercise of reasonable care; also, the failure to maintain a safe place, due to the use of improper material and the application of it in marking off the paint strips.

The errors claimed are that the court erred in granting respondents' motion for dismissal, and in failing to allow expert testimony as to the character and properties of paint, and its manner of application.

While the paint marks complained of were not made by either respondents or any of their servants, that fact is immaterial, for, of course, the law is positive that it is the duty of an employer to furnish a reasonably safe place for the workman to perform his duties. A master is not, however, an insurer of the safety of an

employee, and the doctrine of assumption of risk, where the master is ignorant and the workman is aware of the dangerous place, appliance, or machine, controls.

[1] In this case no complicated machine or appliance, implement, or construction, was involved. There was not even a tool involved in the case. The strip of paint on which appellant slipped was a very narrow one and was perfectly obvious and apparent to him. He testified that his eyesight and all his faculties were good; that he had worked all day and traversed these paint strips all that time. Respondents had no knowledge of any danger, or of any dangerous material or appliance being used. Neither of the employers nor their agents had been in the hold of the vessel that day, and did not see the paint strips or know anything about them. Appellant was thoroughly familiar with them.

The trial judge rested his decision primarily upon our decision in *Brandon v. Globe Investment Co.*, 108 Wash. 360, 184 Pac. 325, and the cases cited and reviewed therein. In that case we said, quoting from *Cole v. Spokane Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831:

" 'The master could have no more knowledge of such a defect than the servant possessed, for the instrumentality was so simple that it was the duty of the servant to know its condition, and either call the attention of the master to it or protect himself against the possibility of injury. The rule seems well established that an implement of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect, does not come within the rule of safe instrumentalities, for there is no reason known to the law why a person handling such instrument and brought in daily contact with it should not be chargeable equally with the master with a knowledge of its defects.' "

"Where danger is alike open to the observation of all, both the master and servant are upon an equality;

and the master is not liable for an injury resulting from the dangers of the business." *Griffin v. Ohio & M. R. Co.*, 124 Ind. 326, 24 N. E. 888.

It was also said in the *Brandon* case, *supra*, quoting from Beach on Contributory Negligence (3d ed.), § 346:

" 'Knowledge on the part of the employer, and ignorance on the part of the employee are of the essence of the action; or, in other words, the master must be at fault and know of it, and the servant must be free from fault, and ignorant of his master's fault, if the action is to lie. The authorities all state the rule with these qualifications.' "

Without multiplying authorities, other like cases from this court which may be cited are: *Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740; *Lynch v. Ninemire Packing Co.,* 63 Wash. 423, 115 Pac. 838; *LeClaire v. Washington Water Power Co.,* 83 Wash. 560, 145 Pac. 584; *Sainis v. Northern Pac. R. Co.,* 87 Wash. 18, 151 Pac. 93; *Swanson v. Oregon-Washington R. & Nav. Co.,* 92 Wash. 423, 159 Pac. 379.

[2]    Appellant also contends that evidence, offered by him and rejected by the trial court, as to the proper, customary, and usual paint furnished for marking off separate consignments of lumber in ships, together with evidence as to its danger, or lack of danger, should have been admitted. Testimony was offered to show the danger of using certain kinds of paint, particularly red lead, the kind upon which appellant slipped.

The trial court rejected the proffered testimony upon the ground that it was not a matter for expert evidence.

Whether or not the trial court was right in basing the exclusion upon that ground is immaterial, for the reason that, assuming that such custom and such danger in the use of the kind of paint upon which appellant slipped might be the subject of expert testimony, never-

theless, under the circumstances here shown, the case is so clearly within the rules of assumption of risk or contributory negligence under our cases, that the evidence should have been rejected in any event.

We conclude that the trial court was correct in sustaining the challenge and dismissing the case.

The judgment is affirmed.

TOLMAN, C. J., ASKREN, FULLERTON, and BRIDGES, JJ., concur.