[No. 19982.   Department Two.   December 28, 1926.]

LENA KAHLSTROM, *as Administratrix of the Estate of Charles Kahlstrom, Deceased, Respondent,* v. INTERNATIONAL STEVEDORING COMPANY, *Appellant.*[1]

[1] MASTER AND SERVANT (94, 161)—ASSUMPTION OF RISK—SHIPPING—QUESTIONS FOR JURY.   An experienced stevedore, stowing away lumber in the hold of a ship, assumes the risk of injury from the fact that a long pile, drawn violently across the side of the hold, caught against a projecting plank, causing the other end of the pile to swing and strike him, where the danger was obvious and apparent and fully appreciated by him.

Appeal from a judgment of the superior court for King county, Jones, J., entered November 18, 1925, upon the verdict of a jury in favor of the plaintiff, in an action for wrongful death.   Reversed.

¹Reported in 250 Pac. 287; 256 Pac. 503.

*Stephen V. Carey, Roy E. Bigham* and *Alfred J. Schweppe,* for appellant.

*G. F. Vanderveer,* and *S. B. Bassett,* for respondent.

Mackintosh, J.—This suit is one to recover damages for injuries resulting in the death of one Charles Kahlstrom, employed as a stevedore by the appellant in loading a barge.

The appellant's statement as to the nature of the work, the description of the barge and its hold where the piles were being stowed, the method of loading and the arrangement of the appliances and tackle employed in loading, is accepted by the respondent in her brief, and, summarized, shows this state of facts:

The barge was being loaded with long wooden piles at a pier in the city of Seattle, and the loading operation, which had been going on for three or four days, was being conducted by a crew of which the deceased was a member, the deceased being a longshoreman and stevedore of many years' experience. The piles to be loaded were in the water alongside the barge, at the bow of which a scow had been placed, with some skids leading up to the cargo-ports which had been cut in the bow of the barge. The tackle was attached to a pile in the water and dragged up the skids and through the cargo-port into the hold. The fall line of the loading tackle was led through a snatch-block, which had been rigged on the aft combing of one of the midship hatches, thence forward through the bow-ports, and was used as a bull-line to haul the piles out of the water, up the chutes and through the port and back to the stern of the barge. The barge was constructed with a row of stanchions set close together along the keelson to support the upper deck, and between the stanchions and the piles, as they were stowed on either side, was left

a space referred to by the witnesses as a "graveyard", and a pile being hauled inboard through the port hole, and dropped onto the piling which was already stowed, was in danger of falling into this graveyard, and, if it did so in being hauled aft, would catch on and damage the stanchions. To prevent this from happening, the stevedores were provided with twelve-inch planks which were placed athwartships between the stanchions so that they would form a bridge across the graveyard into which the piles should fall when they were hauled into the hold. When so placed, the planks projected into the opposite side of the hold, and there was danger that, when a pile was being hauled aft, either the end or some projection on it would catch on these planks, and, the stanchions acting as a fulcrum, would cause the opposite end of the plank to sweep the opposite side of the hold.

At about ten o'clock in the morning, a pile was hauled through the cargo-port on the port side of the barge in the way indicated, and in the course of its being pulled aft, the end caught on the end of a plank, and with the stanchion acting as indicated, caused the opposite end of the plank to sweep violently forward across the starboard side of the hold, striking Kahlstrom in the legs, knocking him down and fracturing his skull.

When a pile had been dragged into the hold as far as it could be dragged with the fall lines, and a bull-line had been attached to the pile by means of a snorter for the purpose of dragging it farther aft, and it had been taken as far as it could go and the bull-line and snorter taken off, it was Kahlstrom's duty to take the snorter and drag it back to the forward side of the ship, ready for the next pile which had in the meantime commenced to come in. He always carried the

snorter back to the opposite side of the ship from the one on which he had detached it from the pile, the piles being stowed alternately on the port and starboard sides in order to keep the ship evenly trimmed. The planks which were available for use varied in length, and a plank, according to the testimony, eight feet long would have been sufficient at the place and time to have covered the graveyard, but a plank some twenty feet in length was actually used, and it is respondent's claim that this constituted negligence on the part of the appellant and that, by reason of the long overhang, Kahlstrom received his injury. The testimony shows that several times, at least two or three, Kahlstrom had stepped over this projecting plank in carrying the snorter forward.

[1] The appellant makes the claim that there was no negligence on its part and that its motion for a directed verdict, or for a judgment notwithstanding the verdict, should have been granted. It is our view of the testimony that it raised a sufficient question to have gone to the jury as to whether or not the appellant was negligent in the manner in which this plank was being used; but we are compelled to agree with the appellant's further claim that the respondent is not entitled to recover because of the fact of Kahlstrom's having assumed the risk. The instrumentality being used which occasioned the injury was of the simplest nature. To one, even of less experience than the deceased, and one who was not familiar with the surroundings and situation from having worked there throughout the progress of the loading, and who had not actually seen and made use of this plank before, the possibility and likelihood of such a thing happening as actually did happen, must have been open and apparent. To Kahlstrom, it must have been well known

that, upon the striking of the end of a plank placed as this one was in this hold close to stanchions, the opposite end would swing around. That these planks were liable to be hit was obvious. Dragging in piles over uneven surfaces, themselves of different dimensions and with projections on them, would call to mind instantly the likelihood of their becoming caught against objects such as this plank, with the inevitable result. The danger was so open, obvious and apparent, and Kahlstrom must have been so aware of it, that, even though appellant was negligent in using the plank, Kahlstrom assumed the risk of such use. For that reason, the challenge to the sufficiency of the evidence or the motion for a judgment notwithstanding the verdict should have been sustained.

The facts in this case are strikingly similar to those in *Mayer v. Queen City Lumber Co.*, 64 Wash. 567, 117 Pac. 392, where the court said:

"There was no hidden defect causing the appellant's injury. All of the dangers were open and apparent to any one who had the opportunity to pass over the walk, and if it be true that the appellant hauled one or two pieces of timber prior to the one he was hauling at the time of his injury, he cannot be heard to say that he did not know of the dangers of the way. We think the record conclusively shows that he did know of the danger  . . ."

In *Lundgren v. Pacific Coast Steamship Co.*, 103 Wash. 81, 173 Pac. 1023, which was a case involving the stowage of a cargo, this court, passing upon the question of assumption of risk, held there that the risk had been assumed, and said:

"All the conditions complained of by him were open, obvious and apparent, and all the dangers to which he was exposed were fully appreciated by him and he knew of their imminency. From his years of exper-

ience, he was thoroughly familiar with the entire operation and understood each detail connected with it, and from his hours of work on this particular job, was absolutely acquainted with the dangers attendant upon the particular work in hand. . . . Under these facts he must be held to have assumed the risk of these dangers which were open, obvious and apparent and which were necessarily incident to the work, and this is true even though these dangers may have resulted from the negligence of the employer; 'the servant assumes all the ordinary risks of service and all the extraordinary risks, *i. e.*, those due to the master's negligence which he knows and the dangers of which he appreciates.' "

In *Gessner v. Ramwell,* 140 Wash. 78, 248 Pac. 61, another stevedoring case, the court held that an employe assumed the risk where no complicated machine or appliance, implement, or construction was involved, where the employe was in possession of all his faculties, had worked all of one day in the presence of the danger and was thoroughly familiar with the situation.

See, also: *Hamre v. Rothschild & Co.,* 136 Wash. 522, 240 Pac. 909; *Hansen v. Luckenbach Steamship Co.,* 140 Wash. 394, 249 Pac. 492; *Boldt v. Pennsylvania R. R. Co.,* 245 U. S. 441.

The cases cited by the respondent are clearly distinguishable for the reason that in them the question of assumption of risk was left to the jury, because of the fact that the dangerous situation was not open, apparent and obvious. In *Davis v. Crane,* 12 Fed. (2nd) 355, the case was submitted to the jury for the reason that there was a question as to whether the employe knew the location of the dangerous instrumentality and the danger from it. In *Gila Valley G. & N. R. Co. v. Hall,* 232 U. S. 94, 34 S. Ct. 229, it was held that the employe could not be held, as a matter of law, to assume the risk of dangers unless they were plainly ob-

servable. In *Pearson v. Federal Mining etc. Co.*, 42 Wash. 90, 84 Pac. 632, the general rule was recognized that, where a servant knows the danger or it is so patent that an ordinary and prudent person should see and appreciate it, he assumes the risk, but it was held there that it did not appear that the danger, at the time of the injury, was so patent that an ordinary person could see and appreciate it, and therefore it could not be held, as a matter of law, that the risk had been assumed. The case of *McPherson v. Twin Harbor Stevedoring etc. Co.*, 139 Wash. 61, 245 Pac. 747, was to the same effect.

The judgment is, therefore, reversed and the action dismissed.

TOLMAN, C. J., ASKREN, BRIDGES, and PARKER, JJ., concur.

## ON REHEARING.

[*En Banc.*   June 6, 1927.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the opinion heretofore filed herein. The judgment is, therefore, reversed and the action dismissed.