[No. 13021.   Department One.   May 20, 1916.]

HALVER ENGIRBRITSON, *Appellant*, v. TRI-STATE CEDAR
COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—METHODS OF WORK—
ASSUMPTION OF RISK—OBVIOUS DANGERS.   An experienced logger
struck by the top of a dead tree that fell when hit by a rolling log,
assumes the risk of the method of work adopted in falling a tree
horizontally along a hillside and cutting it into logs in that posi-
tion; since the dangers were as open and apparent to him as to the
master.

SAME—INJURIES TO SERVANT—MEDICAL ATTENDANCE—LIABILITY FOR
MALPRACTICE.   Where an employer without profit to himself employed
a physician to furnish medical attendance to the men, $1 per month
being deducted from wages to pay hospital fees, he is liable for the
malpractice of the physician only in case of failure to exercise rea-
sonable care in the selection of a competent physician.

Appeal from a judgment of the superior court for Spokane
county, Wright, J., entered March 22, 1915, in favor of the
defendant, notwithstanding the verdict of a jury rendered
in favor of the plaintiff, in an action for personal injuries
sustained by an employee in falling a tree.   Affirmed.

*O. C. Moore* and *R. P. Woodworth*, for appellant.

*Cannon & Ferris*, for respondent.

MOUNT, J.—Action for personal injuries.   On issues joined
and trial to the court with a jury, a verdict was returned in
favor of the plaintiff.   Thereafter the defendant filed a mo-
tion for judgment notwithstanding the verdict, and in case
of a denial of that motion, for a new trial.   The plaintiff also
filed a motion for a new trial, claiming that the verdict was
insufficient by reason of passion and prejudice on the part of
the jury.   On considering these motions, the trial court
granted the defendant's motion for judgment notwithstand-
ing the verdict, and dismissed the action.   The plaintiff has
appealed.

[1]Reported in 157 Pac. 677.

The facts are as follows: The appellant was employed by the respondent in logging operations conducted in Idaho. The appellant was a man thirty years of age, and had followed this character of work for four years. He was thoroughly competent to do the work for which he was employed.

At the time of the accident, the appellant and another employee were directed by the foreman in charge of the defendant's logging operations to saw down a tree upon a hillside. This tree was about two feet in diameter at the butt, and about one hundred and ten feet in length. The appellant was directed to fall the tree horizontally along the hillside in order that the logs might be readily rolled onto a near-by skidway, and because to fall it down hill, as was customary, might endanger the lives of men who were employed at that point getting ready to move the camp.

The appellant sawed the tree down, and it fell horizontally with the hill. Part of his duties after falling the tree was to cut it up into sawlogs. While no specific direction was given to cut this tree into sawlogs after it had been felled, that was the understanding, and he proceeded to do the work with his companion. After sawing off five logs, each sixteen feet in length, and when they were working near the top end of the tree and had cut off the sixth log, that log would not separate from the rest of the logs which had been cut off, and the appellant took his axe and tapped the log on the upper side, so that it rolled out from between the other logs, and down the hill. After it had gone about twenty feet, it struck another tree, which happened to be dead at the top. The concussion caused the top of the standing tree to break and fall. The falling top struck the appellant upon the leg, causing his injury. The appellant was then sent to a hospital, where he was treated for some time. He alleges that he was maltreated, and sought damages for the alleged negligence of the defendant in directing the tree to be fallen lengthwise of the hill, and also for malpractice of the physician who treated him.

These are substantially the facts as testified to by the appellant.

We think there can be no doubt that the appellant assumed the risk, because he was fully aware and knew of the dangers incident to falling the tree horizontally along the hillside. He was as fully aware of the danger of rolling a log down the hill as the master could have been.

It is argued by the appellant that the respondent selected an unsafe and improper method of performing the particular work, and thereby created an unsafe place for the performance of the work, and for that reason was negligent. But it is apparent that whatever danger there was in the work was as apparent to the appellant as it was to the respondent. As we have seen, the appellant was experienced in this kind of work. The dangers were open and apparent, and he was as able to determine the conditions which had arisen by reason of his work as the master could have been had the master been present and personally directing what should be done. This case, upon this branch of it, is controlled by the cases of *Fisher v. Stone & Webster Engineering Corp.*, 67 Wash. 176, 120 Pac. 44, and *Anderson v. Columbia Improvement Co.*, 41 Wash. 83, 82 Pac. 1037, 2 L. R. A. (N. S.) 840. In the former case we said:

"The foreman was not present when the tree was cut. He had previously directed the plaintiff to fall the tree out of the right of way. The plaintiff undertook to do so without further direction, and did so successfully, although the tree leaned toward the right of way. The plaintiff probably knew where the tree was going to fall, by the way he cut it. He no doubt could see, after it started to fall, where it was going and what tree and brush it would encounter in its fall."

The same is true here. The appellant in this case successfully caused the tree to fall as he was directed to do. He was not injured thereby. The fallen tree lay horizontally along a steep hillside. He proceeded to cut it up into sixteen-foot lengths. It was apparent that, when the tree was cut up into

log lengths, and when these lengths were separated, they would naturally roll down the hill, and in so doing they would encounter stumps and trees.    The appellant knew this, and necessarily assumed whatever risk there was in that work.

In the *Anderson* case, *supra*, after quoting the rule that a master is *prima facie* bound to instruct a servant as to all risks which are abnormal or extraordinary, and at the same time of such kind that the servant cannot be held chargeable with an adequate comprehension of their nature and extent, or of the proper means by which to safeguard himself, we said:

"There can be no doubt but that this rule is correct, but it has no application to the facts of this case.    There were no abnormal or extraordinary risks or dangers about the work which the appellant was doing which were not as open and comprehensible to appellant as to respondents. . . . He must have known that, when he cut down a tree one hundred and thirty feet long and one foot in diameter at the base, it might fall upon him, and that such tree was liable to break limbs in its descent against other trees standing near by, and that these limbs would injure him if he stood under them. Under such surroundings, he must appreciate the dangers without being specifically informed thereof.    4 Thompson, Commentaries on Law of Negligence, § 4061.

"Such dangers are necessarily incident to his employment. They are open and obvious to ordinary inspection.    They are made by the progress of the work, and the master is not required to stand by and inform him of things which he may see by merely glancing, or using only ordinary care for his own safety.    The injury in this case clearly resulted from one of the ordinary and open risks of his employment.    He therefore assumed the risk, and the master is not liable."

That rule applies with all its vigor to the facts in this case.

It is equally clear, under the facts, that the master was not liable for the malpractice of the physician, if there was any malpractice.    The evidence shows without contradiction that, when the appellant went to work for the respondent, he knew that $1 per month would be deducted from his wages for hospital fees in case of injury or sickness.    The respondent

had employed a physician who had a hospital at Sand Point to care for men sick or injured in its employ. The appellant was informed of this, and understood all the conditions. The respondent retained no part of the money deducted from the appellant's wages for hospital fees.

In *Simon v. Hamilton Logging Co.*, 76 Wash. 370, 136 Pac. 361, we said:

"This court had held that a company employing a surgeon for the benefit of its men and without profit to itself, is not liable in any event, but that the measure of its duty is to exercise reasonable care in the selection of a competent surgeon. *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235. Although we are invited to review and distinguish our own cases and to declare the contrary rule, we think the one announced is supported by reason as well as the better authority, and have determined to adhere to it without reopening the discussion."

There is no contention in this case that the respondent did not exercise reasonable care in the selection of a surgeon and hospital. The respondent was, therefore, not liable for malpractice, if there was any. We are satisfied that the trial court should have directed a verdict in favor of the defendant upon the motion of the defendant before the case was submitted to the jury. The judgment notwithstanding the verdict was therefore properly granted.

The judgment is affirmed.

Morris, C. J., Fullerton, Chadwick, and Ellis, JJ., concur.