[No. 14655. Department Two. July 8, 1918.]

## Louis Lundgren, *Appellant,* v. Pacific Coast Steamship Company, *Respondent.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—KNOWN DANGERS. An expert receiving shafting lowered into the hold of a ship and injured when the noose slipped because not clamped down, assumed the risk where he saw the particular load and knew the position of the chain was the same as on many previous loads, when he had taken precautions to avoid injury, and fully appreciated the danger, which was open and apparent.

SAME—ASSUMPTION OF RISKS—CONTINUING WORK AFTER COMPLAINT. In such case, the fact that the foreman on complaint gave instructions to get and use strands of rope yarn to prevent the slipping, does not relieve from the rule of assumption of risks, where the directions were disobeyed when the foreman left the scene, and plaintiff continued work without relying on any promise to remedy the conditions.

Appeal from a judgment of the superior court for King county, Jurey, J., entered September 15, 1917, upon granting a nonsuit, dismissing an action for personal injuries sustained by an employee in loading a ship. Affirmed.

*Geo. B. Cole* and *John Wesley Dolby,* for appellant.
*Farrell, Kane & Stratton* and *Stanley J. Padden,* for respondent.

MACKINTOSH, J.—Lundgren was a sailor employed by the Pacific Coast Steamship Company on its ship the "Ravelli," moored at the dock at Seattle. He was a member of what is known as the "hold-gang" at the time when the alleged cause of injury accrued. The duty of that gang at the time was to receive certain iron rods or shafting as they were unloaded from the dock to the ship and to stow them in the hold. These

[1]Reported in 173 Pac. 1023.

rods, or shafting, were four inches in diameter and about fifteen feet in length. They were swung from the dock into the hold by means of a sling, an appliance consisting of a common five-eighth's inch chain with a ring on each end, one of the rings being smaller than the other to permit it and the end of the chain attached thereto to pass through the larger ring, thus making a slip-noose to hold the load when placed around it. The noosing of the shafting was the work of.longshoremen employed on a flat car on which the shafting was brought to the ship's side. The shafting, when noosed, was raised from the flat car and lowered into the hold by means of a winch operated from the ship's deck. It was the duty of the hold-gang to signal the winchman when he had lowered the shafting to about five feet from the floor of the hold; then they·would place their hands upon the load and push it into its proper place for stowage, when the winchman would then further lower it, releasing the noose and swing the tackle back for another load. Each load consisted of about fifteen bars, of a weight of about two tons.

At the time of Lundgren's injury, he had been at work for about three hours or more; the shafting having been loaded and stowed away during this time in the same manner as the load which caused the injury. This particular load came into the hold and was stopped by the winchman at a position about five feet above the floor. Lundgren then ordered it lowered until one end rested. on the hold bottom, thereupon placing his hands upon the shafting with the intention of swinging them into position immediately above the place of stowage. As he did so, the chain on the shaft-ing, which had not been clamped down tightly, slipped, causing the load to roll and catch his fingers between the bars. He claims that, had the longshoremen

clamped the sling down close to the shafting, there would have been no slipping and "it would have never come down. That would not have dropped seven inches." Lundgren had time to see each load as it came into the hold and to notice the condition of the sling before he placed his hands upon the shafting. He testified that he saw the particular load in question coming in and directed its landing, and that he knew the position of the chain on the load. He knew that the chain and ring were in the same position they had been many times before, and that, when in that condition, the sling would slip and the shafting would turn. He was an expert in this work, having worked at it for many years, and he had, on other loads that day, used precautions to avoid injury on account of their condition.

He also testified that he had told the foreman in charge of the entire operation that "someone was going to get hurt," and that the foreman had ordered the longshoremen "to go and get some strands of rope yarn." "You have got to put something between that shafting." This was for the purpose of keeping the rods or shafting from rolling when lowered. After these directions of the foreman, the longshoremen continued to load as theretofore, paying no notice to the directions, and the foreman left the scene of the operation to attend to his duties on other parts of the dock. After his conversation with the foreman, Lundgren continued to receive loads sent in the same way as the previous ones, and unloaded from fifty to sixty more loads, taking about an hour's time, in the same way as he had done before his conversation with the foreman.

At the close of the appellant's case, the respondent challenged the sufficiency of the evidence to warrant its consideration by the jury, which challenge was sus-

tained, and from this disposition of the cause, the appellant prosecutes this appeal.

Among the affirmative defenses plead was that of assumption of risk, and, in our view of the facts, we are satisfied that this defense is fatal to the appellant's hope of recovery. All the conditions complained of by him were open, obvious and apparent, and all the dangers to which he was exposed were fully appreciated by him and he knew their imminency. From his years of experience, he was thoroughly familiar with the entire operation and understood each detail connected with it, and from his hours of work on this particular job, was absolutely acquainted with the dangers attendant upon the particular work in hand. His own testimony makes it apparent that he was in fear of the very thing which actually happened. Under these facts he must be held to have assumed the risk of these dangers which were open, obvious and apparent and which were necessarily incident to the work, and this is true even though these dangers may have resulted from the negligence of the employer; "the servant assumes all the ordinary risks of service and all the extraordinary risks, *i. e.,* those due to the master's negligence which he knows and the dangers of which he appreciates." 3 Labatt, Master and Servant (2d ed.), p. 3188, § 1186. See, also, *Engirbritson v. Tri-State Cedar Co.,* 91 Wash. 279, 157 Pac. 677; *Sainis v. Northern Pac. R. Co.,* 87 Wash. 18, 151 Pac. 93; *Kelly v. Cowan,* 49 Wash. 606, 96 Pac. 152; *Williams v. Spokane,* 73 Wash. 237, 131 Pac. 833; *Waterman v. Skokomish Timber Co.,* 65 Wash. 234, 118 Pac. 36.

The appellant, however, attempts to evade the operation of the rule of assumption of risk by establishing a promise by the foreman to alter conditions and by his assurance of safety. The evidence does not show any absolute promise to repair, nor does it disclose any

assurance of safety, nor did the appellant continue in the work relying upon the directions given by the foreman to the longshoremen, for he knew that those directions were not being followed, that no attention was being paid to them by the loaders, and that the foreman was not present to enforce them, and yet he continued under the unaltered conditions, unloading for an hour after the directions had been given and disobeyed. "A simple protest by the servant *not followed by the assurance that the difficulty will be remedied* will not place the responsibility upon the master." 4 Labatt, Master and Servant (2d ed.), p. 3854, § 1343; 26 Cyc. 1211; *Mattson v. Griffin Transfer Co.,* 90 Wash. 1, 155 Pac. 392. There having been no promise to repair, and the appellant not having been induced to continue the work relying upon the foreman's directions, there is nothing in the case to mitigate the full operation of the rule of assumption of risk, and, for that reason, the judgment of the lower court will be affirmed.

MAIN, C. J., MOUNT, CHADWICK, and HOLCOMB, JJ., concur.