[No. 19273.  Department Two.  October 5, 1926.]

ANTONE HANSEN, *Respondent*, v. LUCKENBACH STEAM-SHIP COMPANY, INCORPORATED, *Appellant*.[1]

[1] MASTER AND SERVANT (98)—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER. A stevedore, receiving sling loads of lumber in the hold of a ship, assumes the risks from the fact of double loads in one sling, liable to topple over when released, where he well knew and appreciated the danger and continued working without any promise to remedy the conditions.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 3, 1924, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in loading a ship.  Reversed.

*Huffer, Hayden & Bucey*, for appellant.

*G. F. Vanderveer* and *S. B. Bassett*, for respondent.

MITCHELL, J.—Antone Hansen was injured while engaged in stowing lumber in the hold of a ship belonging to the Luckenbach Steamship Co., Inc.  He sued the steamship company and recovered a verdict and judgment, from which the steamship company has appealed.

The negligence charged was that the loads of lumber

[1]Reported in 249 Pac. 492.

conveyed into the hold of the vessel were too large for a single sling that was used for that purpose, that is, the loads should have been handled with a double sling, else they should have been divided; that the use of a single sling in handling loads of the size carried disarranged the timbers or boards so that, upon releasing the sling after a load was delivered in the hold, they would fall apart and topple over; and that it was in that way the respondent was injured on this occasion. The appellant denied that it was negligent, and affirmatively pleaded assumption of risk and contributory negligence.

For the purpose of a decision in the case, it may be conceded that the verdict of the jury has settled the conflict in the evidence relating to the negligence of the appellant.

[1] The defense of assumption of risk is fatal to any recovery by the respondent, in our opinion. Respondent and those working immediately with him in receiving loads and stowing lumber had had years of experience in that kind of business. They had worked at this place two and one-half hours at the time the respondent was injured. During that time, the loads were all the same size, of the same kind of lumber, and each carried with a single sling. They testified to a knowledge of the danger in handling such loads with a single sling and that it frequently happened in that kind of operation that, upon releasing the sling after the load had been delivered in the hold of the vessel, the lumber would fall apart, and that the single sling method would permit the pieces of lumber to become disarranged from the orderly position they would be kept in if the load were carried in a double sling. They further testified that, upon the delivery into the vessel of the load that caused respondent's injuries, they noticed the load was "disordered," "a ragged load."

Respondent himself testified:

".Q. You knew when this particular slingload was landed there that it was as large as the others that had preceded it, didn't you? A. I did. Q. And you had seen a number of loads of this size handled in the same way fall over? A. Yes, sir. . . . Q. It was just as large and handled in the same way? A. Yes, sir. Q. And the other loads handled in the same way had fallen over? A. Some of them had fallen over; yes, sir."

He further testified:

"Q. And that figures out about 15 loads in the two hours and a half that you were down there. How many loads did you say fell over, or any portion of them fell over, during that two hours and a half that you were down there? A. Oh, we was ducking them right along. Q. How is that? A. We was dodging them right along. Q. How many do you suppose fell over during that period? Did half a dozen of them fall over? A. Well, I guess it was all of that."

Also, he testified as follows:

"Q. Was there any complaint made about the size of the loads or the method of lowering them into the hold? A. Yes, sir. . . . Q. Did you make any complaint yourself? A. I hadn't time. Everybody else did, so I didn't think it was necessary for me to. Q. What complaints were made? A. They told them to use double slings on the load. Q. Was any complaint made about the size of the load? A. Yes, sir. Q. Did you hear the answer to these complaints? A. I heard someone say 'Go ahead; take her away,' that is all. 'We have got no two slings here.' Q. After these warnings or complaints were made did the loads still come down in single slings? A. Yes, sir."

Also:

"Q. Just when were these complaints made that you spoke about? A. Why, they were made when the first loads came in. Q. That would be during the first half hour that you were working there? A. About the first

half hour, yes. Q. And you say that someone said to go ahead and take it away, meaning by that, I assume, go ahead and stow the lumber? A. That is it. Q. You understood that to mean that they were going to continue to use single slings? A. Yes, sir. Q. And they did continue to use single slings? A. They did until after I was hurt. Q. And they did continue to bring in those same size large slingloads four feet high, as you say? A. Yes, sir. Q. And you continued for two hours after this complaint was made and after it had been indicated to you they were not going to change it, to work there? A. Yes, sir. Q. Although, as you say, you saw slingloads falling over all the time? A. Yes, sir."

The reasons given for the decision in *Lundgren v. Pacific Coast Steamship Co.*, 103 Wash. 81, 173 Pac. 1023, are applicable here. That was a case of a sailor employed as a member of a "hold-gang" whose duty it was to receive certain iron rods or shafting as they were unloaded from the dock to the ship and stow them in the hold of the vessel. He was injured by rods that had become disordered in a single sling load, about three hours or more after he commenced the work. He was an expert at that kind of work. He appreciated the danger and told the foreman that "someone was going to get hurt." The foreman made no promise to him, but did give directions to the workmen on the scow from which the sling loads of iron were taken to provide certain means in making up the loads to keep the bars from rolling, which directions were not complied with. Lundgren was denied relief in the trial court, and in affirming that judgment this court said:

"Among the affirmative defenses plead was that of assumption of risk, and, in our view of the facts, we are satisfied that this defense is fatal to the appellant's hope of recovery. All the conditions complained of by him were open, obvious and apparent, and all the dangers to which he was exposed were fully ap-

preciated by him and he knew their imminency. From his years of experience, he was thoroughly familiar with the entire operation and understood each detail connected with it, and from his hours of work on this particular job, was absolutely acquainted with the dangers attendant upon the particular work in hand. His own testimony makes it apparent that he was in fear of the very thing which actually happened. Under these facts he must be held to have assumed the risk of these dangers which were open, obvious and apparent and which were necessarily incident to the work, and this is true even though these dangers may have resulted from the negligence of the employer; 'the servant assumes all the ordinary risks of service and all the extraordinary risks, i. e., those due to the master's negligence which he knows and the dangers of which he appreciates.' 3 Labatt, Master and Servant (2d ed.), p. 3188, § 1186. See, also, *Engirbritson v. Tri-State Cedar Co.*, 91 Wash. 279, 157 Pac. 677; *Sainis v. Northern Pac. R. Co.*, 87 Wash. 18, 151 Pac. 93; *Kelly v. Cowan*, 49 Wash. 606, 96 Pac. 152; *Williams v. Spokane*, 73 Wash. 237, 131 Pac. 833; *Waterman v. Skokomish Timber Co.*, 65 Wash. 234, 118 Pac. 36."

It was further said in that case:

"There having been no promise to repair, and the appellant not having been induced to continue the work relying upon the foreman's directions, there is nothing in the case to mitigate the full operation of the rule of assumption of risk, and, for that reason, the judgment of the lower court will be affirmed."

Reversed, with directions to dismiss the action.

Tolman, C. J., Askren, Parker, and Mackintosh, JJ., concur.