[No. 36319.    En Banc.    October 10, 1963.]

JOHN A. SCUDERO, *Respondent,* v. TODD SHIPYARDS CORPORA-
TION, *Appellant.**

*Karr, Tuttle, Campbell, Koch & Granberg,* for appellant.
*Corbett, Siderius & Lonergan,* for respondent.

HAMILTON, J.—Defendant appeals from an adverse judg-
ment, entered under admiralty principles, assigning error
to the application of maritime law, refusal of proposed in-
structions, and the admission of certain evidence.

Plaintiff, a carpenter, was injured aboard a nonself-pro-
pelled barge, the *Limestone,* anchored in defendant's ship-
yard on the navigable waters of Puget Sound. The *Lime-
stone* is a 4,271 ton, 350 foot, reinforced concrete LST type
craft, constructed at San Francisco in 1943 for the military
service. During or after World War II it came to Tacoma,
where it remained until removed to defendant's shipyard.

*Reported in 385 P. (2d) 551.

At the time of plaintiff's injury, the *Limestone* was privately owned, undocumented, and undergoing refitting preparatory to documentation and use as a commercial barge in Alaskan waters. Heavy materials for carrying out the refitting work were delivered from dockside to the deck of the vessel by defendant's dockside gantry crane, operated by defendant's employees. Defendant had subcontracted to plaintiff's employer, General Construction Company, the work of fitting the deck for steel rails upon which was to be mounted a Whirly crane. Plaintiff's task aboard the *Limestone* was to construct wooden forms for concrete footings to support the steel rails. Upon the day of the accident, plaintiff noticed a sling load of steel rails being lifted by defendant's gantry crane over the bow of the vessel and to the area where he was working. In plaintiff's words, he called to his foreman:

"A. . . . and I says, 'Where do you want me to put the load?' And he says, 'That isn't our job.' That's what he said to me. I said, 'Well, it's hanging here. Let's get it.' —I wanted to get it down out of the way. And then he said, 'Well, put it on the side.' I told him there isn't much room there, you know. It was only about 8 foot on the side. So I got the the laborer and I told him to get some dunnage to put down there."

After placing several two by fours for the load to rest upon, plaintiff positioned himself at the end of the load and signaled the crane operator to lower the rails. When the rails were about a foot off the deck plaintiff noticed an inexperienced workman standing in a position where he could be injured if the rails spread upon contact with the deck. Plaintiff moved to the side of the load and shouted a warning. Before plaintiff could return to a position of safety, the rails were lowered to the deck, spread, and injured his right foot.

Plaintiff was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, *et seq.*, and for a period of time following his injury plaintiff received compensation, voluntarily paid by the insurer. Thereafter, plaintiff instituted suit against defendant alleging negli-

gence in failing to have personnel (a "rigger") aboard the *Limestone* to direct the crane operator in the lowering of the rails. The defendant affirmatively pleaded contributory negligence and assumption of risk (volenti non fit injuria) on the part of plaintiff.

The jury, in answer to special interrogatories (which the parties concede, under Rule of Pleading, Practice and Procedure 49, controls the general verdict), found defendant guilty of negligence, proximately causing the accident to the extent of 95 per cent, and found plaintiff assumed the risk or was guilty of contributory negligence, proximately causing the accident to the extent of 5 per cent. The jury assessed plaintiff's total damage at $10,000. The trial court, after denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, applied the admiralty doctrine of comparative negligence and entered judgment for plaintiff in the sum of $9,500.

Defendant first asserts the trial court erred in applying maritime law, contending that the tort alleged is not related to maritime work and, in any event, the doctrine of assumption of risk (volenti non fit injuria) bars recovery.

██  State courts derive in personam admiralty jurisdiction from 28 U.S.C.A. § 1333(1),[1] commonly referred to as the "saving to suitors" clause. *Panama R. Co. v. Vasquez,* 271 U. S. 557, 70 L. Ed. 1085, 46 S. Ct. 596; *Cline v. Price,* 39 Wn. (2d) 816, 239 P. (2d) 322. And, the substantive rules of the maritime law apply to the action whether the proceeding be instituted in an admiralty or in a common law or state court. *Carlisle Packing Co. v. Sandanger,* 259 U. S. 255, 66 L. Ed. 927, 42 S. Ct. 475.

The United States Supreme Court has treated as settled the rule that admiralty jurisdiction depends in contract matters upon the nature of the transaction involved, and in tort matters upon the tortious event occurring upon

---

[1] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C.A. § 1333(1).

navigable waters. *The Plymouth,* 70 U. S. 20 (3 Wall. 20), 18 L. Ed. 125; *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 66 L. Ed. 321, 42 S. Ct. 157, 25 A.L.R. 1008; *Gonsalves v. Morse Dry Dock & Repair Co.,* 266 U. S. 171, 69 L. Ed. 228, 45 S. Ct. 39; *Minnie v. Port Huron Terminal Co.,* 295 U. S. 647, 79 L. Ed. 1631, 55 S. Ct. 884; *The Admiral Peoples,* 295 U. S. 649, 79 L. Ed. 1633, 55 S. Ct. 885.

Within the ambit of the foregoing rules, defendant asserts the instant case is not of admiralty cognizance because the *Limestone* was not a completed and documented commercial vessel. Basically, defendant argues, the service involved was that of reconverting the *Limestone* from a vessel of war to one of commerce, thus rendering the work akin to that of constructing a new vessel.

Initially, it should be borne in mind that the rule, removing construction of a new vessel from admiralty jurisdiction, finds its expression in contract as distinguished from tort cases. *Thames Towboat Co. v. The "Francis McDonald",* 254 U. S. 242, 65 L. Ed. 245, 41 S. Ct. 65; *Grant Smith-Porter Ship Co. v. Rohde, supra.* In the latter case, the court tersely stated (p. 477):

"Construing the first question as meaning to inquire whether the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a State, we answer, yes."

Assuming, arguendo, that locale of a tort is not the exclusive test of maritime jurisdiction, we are, nevertheless, satisfied that the refinement defendant seeks here to draw is too sharp. Expressive of our views in this regard is the language of the court in *New Bedford Dry Dock Co. v. Purdy,* 258 U. S. 96, 99, 100, 66 L. Ed. 482, 42 S. Ct. 243, a contract case:

"It is not always easy to determine what constitutes repairs as opposed to original construction. A contract for the former is maritime; if for the latter, it is not. We are not disposed to enlarge the compass of the rule approved in *Thames Towboat Co. v. The 'Francis McDonald,'* [254 U. S. 242, 65 L. Ed. 245, 41 S. Ct. 65] under which contracts

for the construction of entirely new ships are classed as non-maritime, or to apply it to agreements of uncertain intendment—reasonable doubts concerning the latter should be resolved in favor of the admiralty jurisdiction. . . . " . . .

"This court has not undertaken and will not now essay to announce rigid definitions of repairs and new construction; but we do not accept the suggestion that the two things can be accurately differentiated by consideration of the ultimate use to which the vessel is to be devoted. The view expressed by Judge Hughes in *United States v. The Grace Meade*, Fed. Cas. No. 15,243, is both sound and helpful. 'And generally, it may be held as a principle, that, where the keel, stem, and sternposts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton, the case is one of an old vessel rebuilt, and not of a new vessel. Indeed, without regard to the particular parts reused, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon, the law holds that in such a case it is the old vessel rebuilt, and not a new vessel. But where no piece of the timber of an old vessel is used without being first dislocated and then replaced, where no set of timbers are left together intact in their original positions, but all the timbers are severally taken out, refitted, and then reset, there we have a very different case. That is a case of a vessel rebuilt.' "

■ In the instant case, the *Limestone* was constructed of reinforced concrete. It was a completed vessel. It was upon the navigable waters of Puget Sound in defendant's shipyard. Defendant was refitting it for commercial service in Alaskan waters. The fact that it was not documented is not of itself determinative. *Hercules Co. v. The Brigadier General Absolom Baird*, 214 F. (2d) 66. Plaintiff was on the *Limestone* and engaged in performing labor directly related to the refitting work. He was covered by the Longshoremen's and Harbor Workers' Compensation Act. The work of refitting was maritime work. *American Shipbuilding & Dock Corp. v. John Rourke & Sons*, 4 F. (2d) 845. The alleged tort was of admiralty cognizance.

Defendant next asserts that the doctrine of assumption of the risk (volenti non fit injuria) applies and precludes recovery.

In *Socony-Vacuum Oil Co. v. Smith,* 305 U. S. 424, 431, 83 L. Ed. 265, 59 S. Ct. 262, it is held:

"Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages. . . ."

In support of its argument, defendant cites our cases of *Swanson v. Oregon-Washington R. & Nav. Co.,* 92 Wash. 423, 159 Pac. 379; *Lundgren v. Pacific Coast S.S. Co.,* 103 Wash. 81, 173 Pac. 1023; and *Hansen v. Luckenbach S.S. Co.,* 140 Wash. 394, 249 Pac. 492. These cases are clearly distinguishable. They were not tried under admiralty rules.

In the trial court, defendant relied, to some extent at least, upon *Wilkins v. Foss Launch & Tug Co.,* 20 Wn. (2d) 422, 147 P. (2d) 524, wherein we, in reliance upon *Belden v. Chase,* 150 U. S. 674, 37 L. Ed. 1218, 14 S. Ct. 264, held in a maritime collision case the common-law doctrine of contributory negligence applicable. In the course of that opinion, we stated (p. 427):

"There can be no doubt but that the logical trend of the recent decisions of our supreme court seems toward the rule contended for by the appellant. [Application of the admiralty rule of divided damages in collision cases.] However, as far as we are advised, there has as yet been no really authoritative decision which has squarely applied the rule, at least in a tort action arising out of a collision between vessels; . . ."

Since the *Wilkins* case, the United States Supreme Court has twice spoken upon the subject of the applicability of the doctrine of contributory negligence as a bar in admiralty to recovery for a maritime tort. *Pope & Talbot, Inc. v. Hawn,* 346 U. S. 406, 98 L. Ed. 143, 74 S. Ct. 202; *Kermarec v. Compagnie Generale Transatlantique,* 358 U. S. 625, 3 L. Ed. (2d) 550, 79 S. Ct. 406.

*In Pope & Talbot, Inc., supra,* the court stated (p. 408):

"(a) The harsh rule of the common law under which contributory negligence wholly barred an injured person from recovery is completely incompatible with modern admiralty policy and practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires. . . .

"(b) Nor can we agree that Hawn's rights must be determined by the law of Pennsylvania, under which, it is said, any contributory negligence would bar all recovery in this personal injury action. True, Hawn was hurt inside Pennsylvania and ordinarily his rights would be determined by Pennsylvania law. But he was injured on navigable waters while working on a ship to enable it to complete its loading for safer transportation of its cargo by water. Consequently, the basis of Hawn's action is a maritime tort, a type of action which the Constitution has placed under national power to control in 'its substantive as well as its procedural features. . . .' *Panama R. Co. v. Johnson,* 264 U. S. 375, 386. And Hawn's complaint asserted no claim created by or arising out of Pennsylvania law. His right of recovery for unseaworthiness and negligence is rooted in federal maritime law. Even if Hawn were seeking to enforce a state created remedy for this right, federal maritime law would be controlling. While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court. These principles have been frequently declared and we adhere to them. See *e.g., Garrett v. Moore-McCormack Co.,* 317 U. S. 239, 243-246, and cases there cited. . . ."

And in *Kermarec, supra* (pp. 628, 629):

"The District Court was in error in ruling that the governing law in this case was that of the State of New York. Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law. See *The Plymouth,* 3 Wall. 20; *Philadelphia, W. & B. R. Co. v. Philadelphia & Havre de Grace Steam*

*Tugboat Co.,* 23 How. 209, 215; *The Commerce,* 1 Black 574, 579; *The Rock Island Bridge,* 6 Wall. 213, 215; *The Belfast,* 7 Wall. 624, 640; *Leathers v. Blessing,* 105 U. S. 626, 630; *The Admiral Peoples,* 295 U. S. 649, 651. If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties. *Carlisle Packing Co. v. Sandanger,* 259 U. S. 255, 259. . . .

"In instructing the jury that contributory negligence on Kermarec's part would operate as a complete bar to recovery, the district judge was clearly in error. The jury should have been told instead that Kermarec's contributory negligence was to be considered only in mitigation of damages. *The Max Morris,* 137 U. S. 1; *Pope & Talbot, Inc., v. Hawn,* 346, U. S. 406, 408-409. . . ."

We conclude, from the *Socony-Vacuum Oil Co., Pope & Talbot, Inc.,* and *Kermarec* decisions, *supra,* that the common-law rules of assumption of risk, volenti non fit injuria, or contributory negligence must, in maritime tort cases tried in state courts, be applied in conjunction and in harmony with admiralty doctrines. The *Wilkins* case, *supra,* insofar as it purports to hold otherwise is hereby overruled.

The trial court, in the instant case, submitted the issues of negligence, contributory negligence, and assumption of the risk to the jury, together with appropriate interrogatories, and properly applied the doctrine of comparative negligence.

Defendant next assigns error to the trial court's failure to give certain proposed instructions. We have carefully reviewed the record, the instructions given and the form and content of the proposed instructions, in keeping with the theories upon which the action was tried and in harmony with the admiralty doctrines applicable. We find no merit in defendant's assignments of error. The jury was adequately instructed.

Defendant lastly assigns error to the admission into evidence of certain safety rules promulgated by the Department of Labor and Industries.

Substantially the same information contained in the rules complained of was admitted in two other forms—a safety

rule promulgated by defendant and the testimony of an expert witness upon safety procedures—to which defendant has assigned no error. We find no prejudicial error in the cumulative effect of the challenged evidence.

The judgment is affirmed.

OTT, C. J., HILL, DONWORTH, FINLEY, WEAVER, ROSELLINI, and HALE, JJ., concur.

HUNTER, J., concurs in the result.