[No. 39911.    Department Two.    April 16, 1970.]

*In the Matter of the Estate of* Attilio Scardigli.
Primo Scardigli *et al., Respondents,* v. Gino Tognarelli
*et al., Appellants.**

*Gagliardi & Gagliardi,* by *S. A. Gagliardi,* for appellants.

*Samuel Crippen, Jordan, Adair, Kasperson & Hennessey,* and *Max R. Nicolai,* for respondents.

Finley, J.—This is an appeal from an order of the Pierce County Superior Court approving the final report and subsequent decree of distribution of the estate of Attilio Scardigli. The primary issue is the admission of evidence establishing the identity of the heirs presently residing in Italy. There is also a challenge to the reasonableness of the administrator's fee.

*Reported in 467 P.2d 841.

Attilio Scardigli died intestate in Tacoma on November 24, 1965. A special administrator was appointed, who was made general administrator December 7, 1965. Subsequently, the Italian Consul served a request for special notice of proceedings on behalf of all heirs resident in Italy. The attorney for appellants, Gino and Guido Tognarelli and Terselia Mazzoni also served a request for special notice of proceedings. In March of 1967 the administrator filed his final report and petition for distribution. There was a hearing on this report April 17, 1967. Counsel for the heirs residing in Italy presented a letter from the Mayor of Ponte Buggianese (exhibit A) along with a copy of the "family status"[1] (exhibit B). The documents indicated that Primo and Emilio Scardigli, presently residing in Italy, were first cousins of the decedent, Attilio Scardigli. As such, they would take the estate, valued in excess of $150,000, rather than appellants who are first cousins once removed of the decedent.

The hearing was continued to May 23, 1967. At that time the Italian Consul in Seattle testified that he had sought information about heirs in Italy and had received in reply the letter and family status which he then translated and certified. A power of attorney from the claimants in Italy (exhibit C) was also introduced.

The initial question to be resolved is the admissibility of the evidence showing the identity of the heirs in Italy. The problem is created in part by CR 44. This rule has since been amended[2] to avoid problems similar to those which arose in this case. In pertinent part the previous rule read:

(1) Authentication of Copy.

An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and

[1]The "family status" might be described as an official family tree. The document itself is on a special form and is a copy of the official means of recording births by family line.

[2]The new rule was effective July 1, 1967, after the hearing here in question.

accompanied with a certificate that such officer has the custody . . . If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice-consul, or consular agent or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.

. . .

(3) Other Proof.

This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by an applicable statute, or by the rules of evidence at common law.

This rule was the same as the old Fed. R. Civ. P. 44. The procedure set up there has been called "unreasonable or even impossible when copies of foreign official records are involved." Smit, *International Aspects of Federal Civil Procedure*, 61 Colum. L. Rev. 1031, 1059 (1961). The notes of the advisory committee on rules noted the many practical difficulties involved in the old rule. 5 J. Moore, Federal Practice ¶ 44.01 (6) (2d ed. 1969). However, in changing the rule the advisory committee noted

[t]he amendment insures that international agreements of the United States are unaffected by the rule. Several consular conventions contain provisions for reception of copies or summaries of foreign official records. See, e.g., Consular Conv. with Italy May 8, 1878, art X, 20 Stat 725, TS No. 178 (Dept State 1878).

5 J. Moore Federal Practice ¶ 44.01 (6) (2d ed. 1969). Curiously, the one consular convention cited by the advisory committee is the one which is dispositive of this case. Article 10 of the convention reads in part:

Copies of papers relative to such contracts and official documents of all kinds, whether originals, copies or translations, duly authenticated by the Consuls General, Consuls, Vice-Consuls and Consular Agents and sealed with the seal of office of the Consulate, shall be received as evidence in the United States and Italy.

Convention with the Kingdom of Italy concerning the

rights, privileges, and immunities of consular officers. May 8, 1878, art. 10, 20 Stat. 725, T.S. No. 178.

■■ At first glance, the convention apparently permits the introduction of at least the "family status," an official Italian document. However, appellants contend that the convention only provides for authentication by a representative of the country in which the document is offered in evidence, *i.e.*, by a consular officer of the United States. They further contend that there was no authentication of the document but only a certification of the translation. We are convinced from a close reading of the convention that the primary emphasis relates to the authority and functions of the consular officers residing in each country. The convention guarantees that Italian consuls in this country (and vice versa) shall be exempt from taxes, military service, and arrest in certain cases; shall have certain rights in their offices and shall have recourse to authorities for the redress of any infractions of treaties or conventions. The specific article quoted above (article 10) also refers in another part of the same article to the power of the consular officials to take depositions or to receive contracts relating to real property or business in the home country of the consular officials. Throughout the convention the subject is the authority of Italian consular officials in this country and United States consular officials in Italy. We are convinced that the phrase refers to the power of Italian consular officials to authenticate Italian documents which shall then be introduced as evidence in courts of this country. Of course, it would not require a treaty to allow the introduction of documents authenticated by officials of the United States. We are also convinced that the consul did authenticate the document and translation, sealing it with the seal of his office. Any question about the sufficiency of the certificate is removed by the testimony of the consul in the trial court. The Consular Convention had the standing of a treaty, and as such was part of the "supreme law of the land," by which the "judges in every state shall be bound." U.S. Const. art. 6. *See Vergnani v. Guidetti,* 308 Mass. 450, 32 N.E.2d 272 (1941).

No objection is made to the authenticity of the power of attorney (exhibit C). Indeed, it is authenticated by the Vice Consul of the United States residing in Rome. The power of attorney was admitted for the limited purpose of showing that counsel for respondents residing in Italy was authorized to represent them and also to show that they were living. Any objection to this limited use was waived at trial when counsel for appellants said, "[i]f you are to prove your authority, I have no objection to the admission in evidence of the power of attorney. But, if it is offered for the purpose of establishing heirship, I'm objecting to that." Inherent in accepting the grant of authority is an acceptance that the grantor is presently alive.

■ This leaves the question of the admission of the letter from the mayor (exhibit A). It was not an official document and thus admissible under the convention. It is not authenticated in accordance with rule 44. Further, it is clearly hearsay and was objected to as such. However, ample evidence that the decedent had first cousins, still living, was contained in exhibits B and C which are admissible. Exhibit A consisted largely of an informal summary of exhibit B. As such it was cumulative and any error in its introduction was not prejudicial. *Vanderhoff v. Fitzgerald,* 72 Wn.2d 103, 431 P.2d 969 (1967); *Scudero v. Todd Shipyards Corp.,* 63 Wn.2d 46, 385 P.2d 551 (1963); *Miller v. Staton,* 58 Wn.2d 879, 365 P.2d 333 (1961).

One problem remains. The family status shows that there were a total of 17 first cousins. There is competent evidence that Primo and Emilio Scardigli survived the decedent; there is no proof that the other 15 first cousins did not also survive the decedent.

We therefore remand this matter to the trial court for further proceedings as may seem proper in the exercise of sound judicial discretion regarding appropriate notice to be given to all potential heirs, proof of their present status, possible proceedings under RCW 11.76.200, and for such other action as may seem necessary to the trial court.

It is so ordered.

HUNTER, C. J., NEILL and ROSELLINI, JJ., and LEAHY, J. Pro Tem., concur.

May 27, 1970. Petition for rehearing denied.